**FILED**

**IN THE UNITED STATES DISTRICT COURT**   AUG 1 1 2004
**FOR THE NORTHERN DISTRICT OF ILLINOIS**   MICHAEL W. DOBBINS
**EASTERN DIVISION**   CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| MATTHEW ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Matthew F. Kennelly |
| | ) | |
| v. | ) | 03 C 3857 |
| | ) | (related to 02 C 7262 and 02 C 5023) |
| | ) | |
| NATIONSCREDIT FINANCIAL SERVICES | ) | Magistrate Judge Arlander Keys |
| CORPORATION, doing business as | ) | |
| EQUICREDIT CORPORATION OF ILLINOIS; | ) | |
| EQUICREDIT CORPORATION OF AMERICA; | ) | |
| FAIRBANKS CAPITAL CORPORATION; and | ) | |
| BANK OF NEW YORK, as trustee; | ) | |
| | ) | **JURY DEMANDED** |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

AUG 1 2 2004

<u>**NOTICE OF FILING**</u>

**TO:    SEE ATTACHED SERVICE LIST**

    **PLEASE TAKE NOTICE** that on August 11, 2004, we filed with the Clerk of the
United States District Court for the Northern District of Illinois the following document, copies of
which are attached and are hereby served upon you: **PLAINTIFF'S RESPONSE TO
DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT.**

Al Hofeld, Jr.

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER,
    & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Al Hofeld, Jr., under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that on August 11, 2004, I had a copy of the foregoing document sent by facsimile (exhibits to follow by mail only) and U.S. Mail to the parties named below.

Craig A. Varga
Jonathan N. Ledsky
Varga Berger Ledsky Hayes & Casey
224 South Michigan Avenue, Suite 350
Chicago, IL 60604
312-341-2900 FAX

Al Hofeld, Jr.

2

**FILED**

AUG 1 1 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| MATTHEW ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Matthew F. Kennelly |
| | ) | |
| v. | ) | 03 C 3857 |
| | ) | (related to 02 C 7262 and 02 C 5023) |
| | ) | |
| NATIONSCREDIT FINANCIAL SERVICES | ) | Magistrate Judge Arlander Keys |
| CORPORATION, doing business as | ) | |
| EQUICREDIT CORPORATION OF ILLINOIS; | ) | |
| EQUICREDIT CORPORATION OF AMERICA; | ) | |
| FAIRBANKS CAPITAL CORPORATION; and | ) | |
| BANK OF NEW YORK, as trustee; | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## CROSS MOTION FOR SUMMARY JUDGMENT

**DOCKETED**

AUG 1 2 2004

Plaintiff Matthew Adams responds below to all defendants' Motion For Summary Judgement on all counts. Pursuant to Local Rule 56.1(b)(3), Mr. Adams also submits his Response to Defendants' Statement of Material Facts, which is attached. Mr. Adams fully incorporates herein his Motion for Summary Judgment on Liability, his Memorandum in support thereof and his Local Rule 56(a)(3) Statement of Uncontested Material Facts, which were filed with this Court on July 1, 2004.

## I.    INTRODUCTION

In his Motion for Summary Judgment on Liability, Mr. Adams showed that there is "no genuine issue of material fact" with respect to his allegation that he was required to sign and did sign the Equicredit defendants' confirmation form at the June 6, 2000 closing for his refinance mortgage loan, in violation of the Truth In Lending Act ("TILA"). At closing, a lender may not simultaneously present a borrower with a notice of right to cancel and a confirmation that three days have passed and the borrower has not exercised his right to cancel. Equicredit's policy and practice in this regard also violates the Illinois Consumer Fraud Act. Mr. Adams also showed there is "no genuine issue" concerning his allegation that defendants declined to honor his exercise of his right to rescind the loan. For these violations, Mr. Adams is entitled to the relief requested.

In their Motion for Summary Judgment, defendants argue in the main that:

- Having a confirmation signed at closing is not a per se violation of TILA;

- Mr. Adams understood his right to cancel;

- Because Mr. Adams understood his right to cancel, the fact that he signed the confirmation was not a violation of TILA (because a subjective standard applies);

- Mr. Adams fails to state a claim against defendants under the Illinois Consumer Fraud Act; and

- Defendants Fairbanks and Bank of New York, as servicer and assignee, respectively, cannot

1

be liable for any TILA violation.

Except for a single footnote, (Defs' SJ Memo, p. 2), defendants' Motion does not argue that the confirmation was not signed at closing. Therefore, because Mr. Adams has shown no genuine issue as to the fact that defendants had him sign the confirmation at closing, this Court should grant summary judgment in his favor.

## II.   SUMMARY JUDGMENT STANDARDS

In deciding a motion for summary judgment, a District Court is to view all facts and makes all reasonable inferences in the light most favorable to the non-movant. Payne v. Pauley, 2003 WL 21540424 (7th Cir. 2003). Admissible evidence is to be evaluated in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For summary judgment to be entered against it, the nonmoving party must have failed to "set forth specific facts showing that there is a genuine issue for trial." Id. Further, the Advisory Committee Notes to the 1963 Amendment add that "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Further, summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Payne at 2. Moreover, where the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgement, the motion must be denied. Id. (citing Lujan v. Nat'l Wildlife Fed'n et. al, 497 U.S. 871, 888 (1990)).

2

### III.   TILA IS VIOLATED WHEN A LENDER HAS A BORROWER SIGN, AT CLOSING, BOTH AN ACKNOWLEDGMENT OF NOTICE OF RIGHT TO CANCEL AND A CONFIRMATION THAT THE BORROWER DID NOT EXERCISE THE RIGHT TO CANCEL

#### A.   The Practice is Contrary to TILA's Provisions

Defendants are wrong as a matter of law that having a borrower sign a confirmation of non-cancellation at closing at the same time he is presented with a notice of right to cancel is not a violation of the "clear and conspicuous" requirement. 12 C.F.R.§226.23. This practice is tantamount to having the consumer sign a waiver of his or her right before the rescission period has passed, and TILA itself strictly prohibits waiver of any kind, except in limited circumstances. 12 C.F.R. 226.23(e)(1). The right to cancel can only be waived at closing by a statement in the consumer's handwriting explaining what emergency circumstances require disbursement before the three days are up. Id. This is the sole exception; TILA does not authorize a lender to procure a waiver in any other manner.

Defendants distort the point of the Official FRB Commentary on Regulation Z, 12 C.F.R. 226.23(c)(4)(Def's SJ Memo, p. 3), which actually addresses whether a lender may obtain a signed confirmation from the borrower after the rescission period has expired. The issue in this case is not whether there is anything unlawful about Equicredit's confirmation form itself or about having it signed following the three-day rescission period. (Def's SJ Memo, p. 3). That section of the Commentary reads in full:

**23(c)** *Delay of Creditor's Performance....*

**4.** *Delay beyond rescission period.* **The creditor must wait until it is reasonably satisfied that the consumer has not rescinded. For example, the creditor may satisfy itself by doing one of the following:**

- **Waiting a reasonable time after expiration of the rescission period to delivery of a mailed notice.**
- **Obtaining a written statement from the consumer that the right has not been exercised.**

3

Thus, it is clear from this section that (1) it does not address or approve the signing of a confirmation at closing and (2) to the extent it directly addresses a lender's use of a confirmation form, this section obviously contemplates use of the form after the rescission period has expired, not at the closing or before the three days have started.

### B. Most Authorities, And All Authorities in the Northern District of Illinois, Hold that the Practice Violates TILA

Defendants' highly selective citation of authority in their Memorandum seeks to capitalize on a split among authorities in various federal districts and circuits, but all authorities that have addressed the issue in the Seventh Circuit and the Northern District of Illinois (and many authorities elsewhere) follow the rule that TILA is violated when an affirmation of non-cancellation is presented with a notice of right to cancel at closing. Rodrigues v. Members Mortgage Co., 2004 U.S. Dist. Lexis 12136 (D.Ma., June 30, 2004); Latham v. Residential Loan Centers of America, Inc., 2004 WL 1093315 at 5 (N.D.Ill.)(J. Plunkett); Pulphus v. Sullivan, 2003 WL 1964333 (N.D.Ill., April 23, 2003)(J. Plunkett); Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 332 (7th Cir. 1999)("Thus, when a lender informs a borrower of his right to rescind, but also contradicts this notice by telling the borrower that he had waived his right to rescind, the borrower may state a claim under [TILA]); Rodash v. AIB Mortgage Co., 16 F. 3d 1146, 1156 (11th Cir.1994)(lender that secured consumer's signature on election not to rescind on day of closing violated TILA because "proffering... the Election not to Cancel during the transaction would confuse any reasonable borrower because it implies... that waiver is... possible during the three-day cooling off period' and "[would] suggest [] that [the consumer] had foreclosed her right of rescission" ), abrogated in part on other grounds, Veale v. Citibank, F.S.B., 85 F.3d 577 (11th Cir. 1996). See also Apaydin v. Citibank Fefd. Savings Bank (In re Apaydin), 201 B.R. 716, 723 (Bankr.E.D.Pa.1996)("By having Plaintiff waiver her right to rescission on a pre-printed form before the 'cooling off' period had expired, defendant violated the dictates of TILA" ); Wiggins v. Avco Financial Services, et al., 62

F. Supp.2d 90, 97 (D. DC 1999); and Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D. IL 1996).

Defendants do not cite a single authority from the Northern District or the 7th Circuit in support of their position. The cases they cite are non-binding and unpersuasive, for the reasons explained infra.

Defendants' cases are also contrary to the authorities in the Northern District and the Seventh Circuit, none of which undertook an inquiry into the subjective state of mind of the borrower or other circumstances of the particular closing in order to determine whether obtaining a signature on the confirmation at closing is a TILA violation. Additionally, in Rodrigues the Court found fault with the holding of Smith v. Highland Bank, 108 F.3d 1325, 1327 (11th Cir. 1997), which defendants rely on in support of their position that a subjective standard applies. Smith held that there is not a per se ban on providing both an acknowledgment receipt and waiver of rescission on the same form. Id. The Rodrigues Court criticized Smith's holding because the latter Court "does not specify when the waiver was signed." Rodrigues at 12. Rodrigues also criticized and distinguished Contimortgage Corp. v. Delader, 2001 WL 884085 (Ohio App. July 30, 2001), on which defendants also rely, as an unpublished decision that is not in keeping with federal case law. At 13-14. The other cases defendants cite are also not in keeping applicable federal case law.

Finally, regardless of when a consumer learns or is told of the right to cancel, signing a statement that it has not been exercised before it expires is or could easily be utilized by the lender as a waiver or an effective roadblock to the consumer's exercise of the right. TILA does not intend for lenders to be able to create such a roadblock or waiver. Equicredit's policy and practice with concerning the confirmation could thus thwart the most basic policies promoted by TILA.

**C.    An Objective Standard Determines TILA Violations, Including Whether Having a Confirmation Signed at Closing Violates TILA's "clear and conspicuous" Notice Requirement**

On the basis of case law outside the 7th Circuit, defendants argue in essence that a subjective standard applies when determining whether having a borrower sign a confirmation at closing is a violation of TILA. Defendants are plainly wrong. In the Seventh Circuit and many others, the sufficiency of TILA mandated disclosures are analyzed from the vantage of an "ordinary consumer," a "reasonable" or "average" borrower. Smith v. Cash Store Management, 195 F. 3d 325, 327-328 (7th Cir. 1999). As the Court in Wiggins v. Avco Financial Services, 62 F. Supp.2d 90 (D. DC, 1999), explained:

> All courts are agreed that alleged violations of TILA are subject to an objective standard of review... Courts have applied such an objective standard regardless of whether the borrower is a trained attorney or simply an individual who had a sudden need for additional funds... at 94.

Additionally, "...[b]ecause TILA's disclosure requirements are governed by an objective standard, even a consumer who has not actually been deceived may nevertheless seek relief under TILA." Williams v. Empire Funding Corp., 109 F. Supp.2d 352, 357 (E.D. Pa, 2000). The creditor's intent is also irrelevant and immaterial. Id.

The objective standard applies to the violation Mr. Adams alleges here. Since the time Mr. Adams filed his Motion for Summary Judgment on July 1, 2004, another decision was published in which a federal District Court applied an objective standard to hold that having a borrower sign a confirmation at closing is a TILA violation. In Rodrigues v. Members Mortgage Co., 2004 U.S. Dist. Lexis 12136 (D.Ma., June 30, 2004), two borrowers received at closing both a notice of right to cancel form and a separate "Confirmation of Non-Exercise of Right To Cancel" form, both of which the borrowers signed on closing day. At 2-4. As in this case, plaintiffs there alleged it was the lender's standard practice to have the confirmation signed at closing. Id. On a motion to dismiss, the Court upheld plaintiffs' TILA rescission claim through the application of an objective standard:

"What has the serious potential for actual harm is the request to sign both forms at

6

the closing. Not only might a reasonable borrower believe it was necessary to sign both forms at the time of closing, but the practice is particularly confusing because a reasonable borrower might not understand that despite signing the confirmation, he still had the right to rescind in the three-day cooling off period." <u>Rodrigues</u> at 14.

Similarly, in <u>Wiggins</u>, which was decided on cross motions for summary judgement, plaintiff claimed that a pre-printed confirmation of non-cancellation, which appeared on the same page as the acknowledgment of notice of right to cancel document, was objectively confusing. At 94-95. The Court agreed and held that the notice document provided to plaintiff "is so confusing as to preclude clear and conspicuous notice required by TILA." At 96. The Court held that the average borrower "is bound to be confused about whether her right of rescission has actually passed." <u>Wiggins v. Avco</u>, 62 F. Supp. 2d at 96. The court gave several reasons for its conclusion. First, the language of the election not to rescind is both objectively false and internally inconsistent because, just like Equicredit's notice and confirmation in this case, the notice of right to cancel is written as if given at closing while the confirmation is written in the past tense - as if the three day rescission period has passed. At 96. The Court found that this phrasing tells the average borrower at the closing that she may no longer rescind and, thus, the form "essentially constitutes a waiver of the right to rescind." <u>Id</u>. Second, the past tense misleads the borrower into thinking that the three-day rescission period has already passed. <u>Id</u>. Third, "the proximity of the election not to rescind [to the acknowledgment of notice of right to cancel] implies that it too must be signed before the transaction may be processed." <u>Id</u>.

### D.     The Most Basic Policies Underlying TILA Disfavor Defendants' Position on the Law

The underlying policies of TILA also mitigate against defendants' position on the law. Congress intended TILA to be liberally construed in favor of borrowers, and TILA is in purpose and effect a strict liability statute that considers acts exclusively. First, "[s]ince the Act is a remedial statute designed to protect borrowers who are viewed as not on an equal footing with lenders, either

7

in bargaining for credit terms or in knowledge of credit provisions, it is to be liberally construed in favor of borrowers." In re Steinbrecher, 110 B.R. 155, 161 (Bankr. E.D.Pa. 1990); *accord*, Davis v. Werne, 673 F.2d 866, 869 (5th Cir. 1982); Leathers v. Peoria Toyota-Volvo, 824 F. Supp. 155, 157 (C.D. Ill. 1993).

Second, "...any violation of TILA, regardless of the technical nature of the violation, must result in a finding of liability against the lender. [citation omitted] Such a strict assessment of damages by courts was intended by Congress to create a 'private attorney general' scheme of enforcement which would obviate the need for a large federal bureaucracy to perform such a task." In re Steinbrecher, 110 B.R. 155, 161 (Bankr. E.D. Pa. 1990).

Third, courts have consistently required strict compliance with the required disclosures and terminology of TILA. *See* Herrera v. First N. Sav. & Loan Ass'n, 805 F.2d 896, 899-900 (10th Cir. 1986); Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1379-80 (11th Cir. 1984); Smith v. No. 2 Galesburg Crown Fin. Corp., 615 F.2d 407, 416 (7th Cir. 1980), noted in Cowen v. Bank United of Texas, FSB, 70 F.3d 937 (7th Cir. 1995) (in general "hypertechnicality reigns" under TILA); April v. Union Mortgage Co., 709 F. Supp. 809, 811 (N.D. Ill. 1989). As the Seventh Circuit has explained:

> **It is not sufficient to attempt to comply with the spirit of TILA in order to avoid liability. Rather, strict compliance with the required disclosures and terminology is required. Many violations of TILA involve technical violations without egregious conduct of any kind on the part of the creditor. However, Congress did not intend that creditors should escape liability for merely technical violations.**
>
> **... We will therefore require strict adherence to the required terminology under the statute and regulations, and we will not countenance deviations from those requirements, however minor they may be in some abstract sense.** Smith v. No. 2 Galesburg Crown Fin. Corp., 615 F.2d at 416.

**IV.   MR. ADAMS' SOPHISTICATION AS A CONSUMER AND HIS UNDERSTANDING OF HIS RIGHT TO CANCEL ARE IMMATERIAL; ALTERNATIVELY, HE IS NOT A SOPHISTICATED BORROWER BECAUSE THE CONFIRMATION COMPROMISED HIS UNDERSTANDING**

Applying the law to this case, the fact that Mr. Adams may still have understood that he had three days in which to cancel his loan transaction, even though at closing he also signed a confirmation of non-cancellation, is simply immaterial to his claim or any cognizable defense. (Def's SMF #12). Under the law of the Seventh Circuit, the relevant legal issue is simply whether or not Mr. Adams signed the confirmation at closing. See supra. For the same reason, the facts that Mr. Adams did not exercise his right to cancel within three days and did not review his closing documents until after three days had passed are immaterial. (Defs' SMF, ¶14).

However, even if Mr. Adams' subjective understanding as a consumer was material to determining whether a TILA violation occurred, which it is not, summary judgment should be denied to defendants because Mr. Adams testified that, when he was asked to sign the confirmation at his closing, he found the idea alarming and questioned his broker about it, stating "how can you give me three days and take them away at the same damn time. It doesn't make any sense." (Plaintiff's Response to Def's SMF #12; Pl's Statement of Additional Material Facts, ¶1). This is certainly evidence that his understanding of his right to cancel was compromised at the closing.

Plaintiffs also offer Mr. Adams' own testimony to dispute defendants' assertion that he was a sophisticated borrower who understood that he still possessed a right to cancel even after he had signed a confirmation stating that he had not exercised that right. (Def's SJ Memo, p. 4). While Mr. Adams (who operates a home improvement contracting business, not a mortgage business) did help prospective customers locate financing and even provided them with preliminary notices of right to cancel, he testified that he never once attended a customer's loan closing. (Pl's Response to Defs' SMF #13; Pl's Statement of Additional Material Facts, ¶2). "Yours was the second closing I've ever been to." (Id.). More significant, Mr. Adams never presented his customers

with anything like a confirmation of non-cancellation. The first time he himself had e

been presented with a confirmation of non-cancellation was at his own second mortgage c

Equicredit on June 6, 2000. Mr. Adams testified:

> I've never seen a notice a cancellation with something different on the back... I
> never seen anything on a notice of cancellation except blank... I've always seen th
> and used them when there's nothing on the back of them. (Pl's Response to D
> SMF #13; Pl's Statement of Additional Material Facts, ¶4).

Mr. Adams purchased residential property for the first time in his life in 1990 - there is n

right to rescind associated with purchase money mortgages.[1] (Pl's Statement of Addition

Facts, ¶3). Thus, the only loan closing that he has ever attended in which he received a co

was for the Equicredit loan. (See Pl's SMF, Appendix C, pp. 29-30; Pl's Statement of

Material Facts, ¶4). This new form, stating that he had not exercised his right with

allowed, compromised his understanding of his three-day right to cancel, as indicated su

Mr. Adams' testimony to his perplexity, it is obvious he was not sophisticated enough to

signing the confirmation would not or might not have any effect on his right to canc

lawyers and judges argue this point, Mr. Adams could not reasonably be expected to kn

his closing agent was following standard procedure with the confirmation or wheth

practice is authorized by the Truth In Lending Act.

## V.    MR. ADAMS SIGNED THE CONFIRMATION FORM AT CLOSING

Mr. Adams testified repeatedly from memory that he signed the confirm

at closing. (Pl's Response to Defs' SMF, ¶ 12; Pl's SMF ¶¶ 6-7). He also testified that at

he questioned how having him do so made sense and why he was being asked to do

response to his inquiry, he was told it was standard. (Pl's Statement of Additional Mat

---

[1]Mr Adams also testified that he owned an auto dealership and may also have b
involved with the purchase or leasing of commercial property, but no three-day right t
exists in those contexts either. See Pl's SMF, Appendix C.

¶1).  The probable loan closer (because her signature and notary seal are on Mr. Adams' closing documents), Ms. Mitchell, could not recall Mr. Adams' closing.  As defendants point out, she testified that it was her practice to have a borrower sign a confirmation when they came to pick up their check. (Defs' SMF, ¶ 16).  However, her testimony is inadmissible and may not be considered by the Court as a basis for granting or denying summary judgment because defendants failed to establish the necessary foundation required by Federal Rule of Evidence 406 for testimony concerning habit or routine practice.  Thompson v. Boggs, 33 F.3d 847, 854 (7th Cir. 1994). Additionally, her own testimony casts doubt on whether she had a habit or routine with respect to use of the confirmation; she testified that it was "unusual" for a lender to utilize a confirmation form such as Equicredit's, which means she did not often utilize such a form at the closings she performed. (Pl's Response to Defs' SMF, ¶ 16; Pl's Statement of Additional Material Facts, ¶10). Indeed, she testified that she simply did not recall whether she had ever presented a confirmation at a closing.  (Pl's Response to Defs' SMF, ¶ 16; Pl's Statement of Additional Material Facts, ¶8). Finally, the Federal Rules of Evidence give priority to testimony provided from personal memory over testimony based on supposed habit.

Rather, Ms. Mitchell's testimony, as well as the documentary evidence, corroborates Mr. Adams' testimony that he signed the confirmation at closing.  Ms. Mitchell testified that she agreed that Equicredit's Letter of Closing Instructions required closing agents to return all signed closing documents, including the confirmation, to the lender within 24 hours following closing, and she also testified that she followed lenders' closing instructions. (Pl's Response to Defs' SMF, ¶ 16; Pl's Statement of Additional Material Facts, ¶5).

Ms. Mitchell also testified that the UPS shipping slip contained within the title company's loan file (Appendix A), which document bears her handwriting and is dated the same day of plaintiff's closing (June 6, 2000), indicates that all of the closing documents listed on the Letter

11

of Closing Instructions, including the confirmation, were sent back to Equicredit on June 6, 2000. (Pl's Statement of Additional Material Facts, ¶6-7). A copy of the UPS shipping slip is appended hereto as <u>Appendix A</u>. She further testified there is no record of whether or when Mr. Adams returned to the title company to pick up his proceeds check and that there would not be any record if he had mailed or faxed back any documents after closing. (Pl's Response to Defs' SMF, ¶ 16; Pl's Statement of Additional Material Facts, ¶9).

As set forth in Mr. Adams' Statement of Uncontested Material Facts, the Equicredit defendants' policy and practice, as seen in its standard Letter of Closing Instructions and other documents, was to have its closing agents obtain signature on the confirmation at closing so that all signed documents could be returned to Equirecredit within 24 hours after closing. Equicredit's chief legal authority does not believe that having a confirmation signed at closing violates TILA. (Pl's Response to Defs' SMF #16; see also Pl's SMF, ¶¶ 8-29.) The Letter of Closing Instructions used in connection with Mr. Adams' loan states unequivocally: "The closing documents listed below are to be returned within one working day after closing. Please do not hold until after disbursement." Among the documents listed below is the "notice of right to cancel/confirmation," which Equicredit has admitted was one, two-sided document. (Pl's SMF, ¶ 19).

Finally, defendants suggest that the fact that the language of the confirmation is phrased in the past tense somehow has evidentiary value. This point contributes nothing to establishing when it was or was not signed. Thus, defendants have no admissible evidence to controvert Mr. Adams' testimony that he signed the confirmation at closing. Summary judgment must be granted in Adams' favor.

## VI.  THE EQUICREDIT DEFENDANTS HAD A POLICY AND PRACTICE OF INSTRUCTING ITS CLOSING AGENTS TO HAVE BORROWERS SIGN THE <u>CONFIRMATION AT CLOSING</u>

Defendants suggest that the signing of a confirmation at a closing should not be a

12

violation if it is "one-time innocent mistake." (Defs' SJ Memo, pp. 3-4). However, Mr. Adams and plaintiffs in related cases filed contemporaneously in the Northern District have all contended that for defendants here the signing of the confirmation at closing is far from an innocent mistake. On the contrary, Mr. Adams shows that Equicredit had a nationwide policy and practice of instructing its closing agents to sign the confirmation at closing and return all executed closing documents, including the "Notice of Right to Cancel/Confirmation," to Equicredit within 24 hours following closing. (Pl's SMF, ¶¶ 15-29). Every closing agent that has been deposed agrees that this was the plain meaning of the instruction.

Defendants argue that Mr. Adams did not allege any wrongdoing by Equicredit Corporation of America. (Defs' SMF, ¶ 5). Defendants' misread plaintiff's complaint. (See Pl's Response to Defs' SMF, ¶ 5). ¶¶ 11, 18-20 and 27 of plaintiff's complaint allege that Equicredit Corporation of America had the policy and practice described in the preceding paragraph and that it was an assignee of plaintiff's loan. Nevertheless, Mr. Adams hereby agrees to dismiss Equicredit Corporation of America from this action, as its continued involvement adds little.

## VII.   NATIONSCREDIT AND EQUICREDIT OF ILLINOIS VIOLATED THE ILLINOIS CONSUMER FRAUD ACT

Nationscredit and its corporate predecessor, Equicredit Corporation of Illinois, violated the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, by having its agent obtain Mr. Adams' signature on the confirmation at closing, in violation of TILA's "clear and conspicuous" notice requirement. Equicredit's act of simultaneously presenting and juxtaposing the notice of right to cancel with the right hand and the contradictory, confirmation of non-cancellation with the left hand is inherently deceptive. As shown, the act tended to confuse and negate Mr. Adams' right to cancel. Mr. Adams was damaged in that he was deprived of his right, and defendant's action was the proximate cause of his damages. Equicredit's act was intended to induce his reliance because Equicredit wanted to consummate, process and disburse the loan immediately. The act was also

13

intentional in that it was in keeping with policy and practice, as shown by instruction 6.1 in the Letter of Closing Instructions. The act occurred in the course of trade and commerce in lending.

## VIII.   PLAINTIFF MAY RESCIND AGAINST AN ASSIGNEE AND A SERVICER

### A.   1641(c) TILA Provides that Mr. Adams May Rescind his Loan in the hands of Bank of New York

Defendants misconstrue the significance of Mr. Adams' naming of Bank of New York as a defendant.  Mr. Adams does not allege that the Bank is liable for damages under TILA; rather, the Bank is named because, pursuant to 15 U.S.C. § 1641(c), "**Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.**"  Defendants seek to hide §1641 (c) from this Court by citing §1641(a).  However, the absolute right of a consumer to rescission provided by §1641(c) is a clear exception to the general rule of (a).  Thus, the Bank must rescind, if the Court finds the originating lender liable.

Next, Bank of New York argues that, as assignee of the plaintiff's loan, it cannot be held liable for the assignor's violation of the   ICFA.  However, Mr. Adams does not allege affirmative liability against the Bank for fraud committed by Equicredit and Nationscredit.  Rather, Mr. Adams makes the more limited claim that, under the ICFA, the loan may be cancelled in the assignee's hands.  The ICFA and the authorities interpreting it do not prevent this.  Nothing in Zekman, which defendants cite, (Defs' SJ Memo, pp. 12-13), suggests that documents procured through fraud in violation of the ICFA become magically non-fraudulent or valid upon transfer to an entity that is not a holder in due course or that such a transfer deprives the consumer of all rights to relief. Further, rescission is one of the remedies available under the ICFA. Grimes v. Adlesperger, 67 Ill.App.3d 582, 384 N.E.2d 537, 539 (4th Dist. 1978); Warren v. Borger, 184 Ill.App.3d 38, 539 N.E.2d 1284 (5th Dist. 1989); Perkins v. Collette, 179 Ill.App.3d 852, 534 N.E.2d 1312 (2d Dist. 1989).  And  most cases, including the Illinois Supreme Court in Siegel v. Levy Organization

Development Company, 153 Ill.2d 534, 607 N.E.2d 194 (1992), hold that the ICFA applies to mortgage cases and transactions in real property.  See also City of Aurora v. Green, 126 Ill.App.3d 684, 467 N.E.2d 610 (2d Dist. 1984); Randels v. Best Real Estate, Inc., 243 Ill.App.3d 801; 612 N.E.2d 984  (2d Dist. 1993).

The Bank of New York is not a holder in due course.  Under Illinois law, an assignee of a note and mortgage who is not a holder in due course takes them subject to whatever infirmities they had in the hands of the original obligee.[2]  "The rule is that the assignee of a contract takes it subject to the defenses which existed against the assignor at the time of the assignment." Allis-Chambers Credit Corp. v. McCormick, 30 Ill.App.3d 423, 331 N.E.2d 832, 833 (4th Dist. 1975); Accord Montgomery Ward & Co. v. Wetzel, 98 Ill.App.3d 243, 423 N.E.2d 1170, 1175, 53 Ill. Dec. 366 (1st Dist. 1981); Inland Real Estate Corp. V. Oak Park Trust & Savings Bank, 127 Ill.App.3d 535, 469 N.E.2d 204, 209, 82 Ill. Dec. 670 (1st Dist. 1983); Hirsch v. Arnold, 318 Ill. 28, 148 N.E. 882, 888 (1925); Chicago City Bank & Trust Co. V. Garvey, No. 89 C 8094, 1990 U.S.Dist. LEXIS 10903 at *6 (Aug. 17, 1990), quoting Inland Real Estate, supra, 469 N.E.2d at 209, aff'g Chicago City Bank & Trust Co. v. Radford (In re Radford), 1988 Bankr. LEXIS 1898 (Bankr. N.D.Ill. Oct. 27, 1988); Cobe v. Guyer, 237 Ill. 568, 86 N.E. 1088, 1090 (1908); House v. Davis, 60 Ill. 367, 370 (1871); Central Life Insurance Company of Illinois v. Sawiak, 262 Ill.App. 569, 577 (1st Dist. 1931). See also, Scott v. Mayflower Home Imp. Corp. 831 A.2d 564, 570 (2001).

**B.     Mr. Adams May Rescind His Loan in the Hands of Fairbanks**

Similarly, Mr. Adams does not allege that Fairbanks is affirmatively liable for

---

[2]Mortgage companies (and banks) often claim to be holders in due course. They rarely are. The first problem is that mortgage loan documents are generally not transferred by endorsement on the note. This, of course, is essential to make one a "holder." Adams v. Madison Realty & Development, Inc., 853 F.2d 163 (3d Cir. 1988)("holder" is one who receives by endorsement on note/mortgage or "allonge" physically affixed thereto; usual practice of executing assignment does not make recipient a "holder"). If any transferee did not take by endorsement, it and later owners are not "holders." Lopez v. Puzina, 49 Cal.Rptr.122 (App. 1966).

damages under TILA.   Rather, Mr. Adams names Fairbanks because it is the servicer of his loan. As a servicer, it claims a right to accept payments on the loan from Mr. Adams, a right to report his payment information to credit bureaus and a right to foreclose on the mortgage if it does not receive payments.   Additionally, release of Fairbanks' interest would be required if the Court finds Mr. Adams is entitled to rescind.

In view of Fairbanks' interests in Mr. Adams' loan, Fairbanks as a necessary party to this action, pursuant to Fed. R. Civ. P 19.   Fairbanks is obviously a "person [who] claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability  to protect that interest or (ii) leave any of the parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed. R. Civ. P. 19(a).   Thus, if Fairbanks claims it is entitled to payments from Mr. Adams under the loan that he is suing to rescind, Fairbanks  is properly a party under Rule 19.

Additionally, in an action to rescind a contract, not only the parties to the contract but others having or claiming a substantial interest in it should be joined as parties.   Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 82 (1st Cir. 1982);   Lomayaktewa v. Hathaway, 520 F.2d 1324, 1325 (9th Cir.1975).   In the mortgage loan context, in Hashop v. Federal Home Loan Mortgage Corp., 171 F.R.D. 208 (N.D. Ill.  1997), Judge Zagel ordered joinder of mortgage servicers, i.e., persons claiming a right to payments under notes and mortgages, in an action by the borrowers seeking a declaration of the extent of those payment obligations. See also Murry v. America's Mortg. Banc, Inc., 2004 U.S.Dist. LEXIS 12818 (D. N. Il.)(J. Guzman)(mortgage service joined as necessary party).   Precisely the same situation exists in the present case, where Fairbanks claims a right to payment under plaintiff's mortgage and plaintiff seek an adjudication of that obligation.   Fairbanks

is clearly a party who is appropriately joined, there being no reason why joinder is not feasible.[3]

## IX.   CONCLUSION

For all of the foregoing reasons, this Court should deny defendants' cross motion for summary judgment and grant Mr. Adams' motion for summary judgment.

Respectfully submitted,

_____
Al Hofeld, Jr.

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
    & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

I:\case\Equi10.067\pleadings\sjresp.wpd

---

[3]   There is no requirement that TILA provide a right to relief against a party joined under Rule 19. Brown v. Coleman Investments, Inc., 993 F. Supp. 416, 431 (M.D. La. 1998) (estate of spouse who signed retail installment contract ordered joined in TILA action pursuant to Rule 19 to protect defendant against potential double liability). Similarly, here Mr. Adams joined Fairbanks to protect himself against potential liability to or adverse credit reporting by Fairbanks.

# APPENDIX A

Gregory Clari...

Claim Number: 129434
Date Claim Opened: 6/25/2003
Insured: Delta Funding Corp.
Borrower, if applicable:
Claimant: Margaret M. Donnelly
Title/Policy/Commitment No: 108600E
Order/Escrow/Closing/GF No: 108600E
Premises:
Branch Office/Agent: LAW TITLE INSURANCE COMPANY(IL2030)

i is a copy of a notice of claim/lawsuit involving a claim recently
i to me.

the process of evaluating this claim to determine coverage.
provide you with additional information as it becomes available.

call me if you have any questions or comments concerning this claim.

*Gregory Clari coates* /V.B.
(312) 223 - 2551

FAX 312 223 4971 &

---

**UPS Next Day Air**
**UPS Worldwide Express**

# Shipping Document

...e instructions on back. Call 1-800-PICK-UPS (800-742-5877)
r additional information.

TRACKING NUMBER  1Z E9W 016 22 1002 765 4

SHIPMENT FROM
SHIPPER'S UPS ACCOUNT NO.
E 9 W 0 1 6

REFERENCE NUMBER

NAME  Adams

TELEPHONE  708-229-9020

COMPANY  LAW TITLE INSURANCE CO

STREET ADDRESS  9730 S WESTERN AVE RM 502

CITY AND STATE  EVERGREEN PARK  IL  ZIP CODE 60805 2814

EXTREMELY URGENT DELIVERY TO
NAME  Claims dept

COMPANY  Gilchrist

STREET ADDRESS  877 e butterfield rd

CITY AND STATE (INCLUDE COUNTRY IF INTERNATIONAL)  Lombard, IL  ZIP CODE  60148

---

WEIGHT  ENTER "LTR" IF LETTER
DIMENSIONAL WEIGHT

TYPE OF SERVICE
NEXT DAY AIR
EXPRESS (INT'L)
FOR WORLDWIDE EXPRESS SHIPMENTS
DOCUMENTS ONLY
SATURDAY PICKUP
SATURDAY DELIVERY

OPTIONAL SERVICES
DECLARED VALUE
AMOUNT
C.O.D.
AMOUNT

ADDITIONAL HANDLING CHARGE

TOTAL CHARGES

METHOD OF PAYMENT
BILL SHIPPER
BILL RECEIVER
BILL THIRD PARTY
CREDIT CARD
American Express
Diner's Club
MasterCard
Visa
CHECK

RECEIVERS / THIRD PARTY'S UPS ACCT. NO. OR MAJOR CREDIT CARD NO.  EXPIRATION DATE

THIRD PARTY'S COMPANY NAME

STREET ADDRESS

CITY AND STATE  ZIP CODE

SHIPPER'S SIGNATURE X

SHIPPER'S COPY
CHARGES