

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Matthew F. Kennelly |
| | ) | |
| v. | ) | 03 C 3857 |
| | ) | (related to 02 C 7262 and 02 C 5023) |
| | ) | |
| NATIONSCREDIT FINANCIAL SERVICES | ) | Magistrate Judge Arlander Keys |
| CORPORATION, doing business as | ) | |
| EQUICREDIT CORPORATION OF ILLINOIS; | ) | |
| EQUICREDIT CORPORATION OF AMERICA; | ) | |
| FAIRBANKS CAPITAL CORPORATION; and | ) | |
| BANK OF NEW YORK, as trustee; | ) | |
| | ) | |
| Defendants. | ) | **JURY DEMANDED** |

**FILED**

AUG 1 1 2004

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

## NOTICE OF FILING

**TO:   SEE ATTACHED SERVICE LIST**

PLEASE TAKE NOTICE that on August 11, 2004, we filed with the Clerk of the United States District Court for the Northern District of Illinois the following document, copies of which are attached and are hereby served upon you: **PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS** and **PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS THAT REQUIRE DENIAL OF SUMMARY JUDGMENT.**

Al Hofeld, Jr.

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER,
     & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)



DOCKETED

AUG 1 6 2004

1

## CERTIFICATE OF SERVICE

I, Al Hofeld, Jr., under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that on August 11, 2004, I had a copy of the foregoing document sent by facsimile and U.S. Mail to the parties named below.

Craig A. Varga
Jonathan N. Ledsky
Varga Berger Ledsky Hayes & Casey
224 South Michigan Avenue, Suite 350
Chicago, IL 60604
312-341-2900 FAX

Al Hofeld, Jr.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MATTHEW ADAMS,                        )
                                      )
                  Plaintiff,          )       Judge Matthew F. Kennelly
                                      )       Magistrate Judge Keys
            v.                        )       03 C 3857
                                      )
NATIONSCREDIT FINANCIAL SERVICES      )       (related to 02 C 7262 and 02 C 5023)
CORPORATION, doing business as        )
EQUICREDIT CORPORATION OF ILLINOIS;   )
EQUICREDIT CORPORATION OF AMERICA;    )
FAIRBANKS CAPITAL CORPORATION; and    )
BANK OF NEW YORK, as trustee;         )
                                      )       JURY DEMANDED
                  Defendants.         )

**FILED**

**AUG 1 1 2004**

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1(a)(3), plaintiff Matthew Adams hereby responds as

follows to defendants' Statement of Material Facts:

**DOCKETED**

**AUG 1 6 2004**

1.     Plaintiff Matthew Adams resides at 6610 South California Avenue, Chicago, Illinois

60629.  Adams dep. transcript, p. 4, l. 10-12, Appendix A.

**PLAINTIFF'S RESPONSE:**          Admitted.


2.     Nationscredit Financial Services Corporation ("Nationscredit") used the trade name

"Equicredit" and did business in Illinois.  Defendants Nationscredit Financial Services Corporation

and Equicredit Corporation Of America's Answer to Complaint, Appendix B.

**PLAINTIFF'S RESPONSE:**          Admitted.

1

3.      Fairbanks Capital Corporation ("Fairbanks") is a Utah corporation engaged in the business of servicing loans. It does business in Illinois. It is the servicer of Matthew Adams' note and mortgage. Fairbanks' Answer to Complaint, Appendix C.

**PLAINTIFF'S RESPONSE:**      Admitted.

4.      Defendant Bank of New York as Trustee is a federally chartered corporation with its principal place of business in New York. In its capacity as trustee for EQCC Home Equity Trusts 2001-IF, it holds title as assignee to Matthew Adams' loan. Bank of New York as Trustee's Answer to Plaintiff's Complaint, Appendix D.

**PLAINTIFF'S RESPONSE:**      Admitted.

5.      Plaintiff has alleged no allegations of wrongdoing by Equicredit Corporation of America. Plaintiff's Complaint, Appendix E.

**PLAINTIFF'S RESPONSE:**      Denied. In fact, paragraphs 11, 18-20 and 27 of plaintiff's complaint allege that Equicredit Corporation of America employed a policy and practice of having borrowers sign the confirmation form at closing; that it was the assignee of Mr. Adams' loan; and that its policy and practice violated the Illinois consumer Fraud Act, 815 ILCS 505/2.

6.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 1367 (supplemental jurisdiction), and 15 U.S.C. § 1640 (Truth in Lending Act). The plaintiff resides in the District and the transactions [sic] occurred here.

2

Plaintiff's Complaint, Appendix E.

**PLAINTIFF'S RESPONSE:**        Admitted.


7.       On June 6, 2000, plaintiff, Matthew Adams, obtained a $32,100 mortgage loan from Nationscredit.  Plaintiff's Complaint, Appendix E.

**PLAINTIFF'S RESPONSE:**        Admitted.


8.       Neither Nationscredit nor Equicredit of America have a present interest in plaintiff's loan.  Defendants' Responses to Interrogatories, Appendix F.

> **PLAINTIFF'S RESPONSE:**        Denied.  On information and belief, under certain
> circumstances, the contract under which Equicredit sold Mr. Adams' loan to the
> Bank of New York obligates Equicredit to repurchase the loan from the Bank.
> Nationscredit as Equicredit's successor would be subject to that contractual duty.


9.       Plaintiff's Complaint alleges that at the closing of his loan, he was simultaneously presented with the notice of right to cancel form and a form entitled "confirmation" which confirmed that he did not wish to cancel his loan transaction.  Plaintiff goes on to allege that receiving the notice of right to cancel and signing the confirmation form on the same day interfered with his right to rescind, thus violating TILA.  Plaintiff's Complaint alleges this TILA claim against all defendants and seeks rescission, statutory damages, and attorney's fees and costs.  Plaintiff's Complaint also asserts that Nationscredit violated the Illinois Consumer Fraud

3

Act by depriving plaintiff of his right to reconsider the loan.  Plaintiff's Complaint, Appendix E.

      **PLAINTIFF'S RESPONSE:**      Admitted.


10.     The confirmation form attached to plaintiff's Complaint clearly states, "The undersigned . . . warrants that more than 3 business days* have elapsed since receipt of the 'Notice of Right to Cancel' and further warrant(s) that the undersigned has/have not rescinded or cancelled said real estate mortgage loan transaction . . ."  Plaintiff's Complaint, Appendix E.

      **PLAINTIFF'S RESPONSE:**      Plaintiff admits this statement of fact but objects on the ground that defendants do not quote the language of the confirmation document in full.  The form also states, in part, "The undersigned, having been given due notice as required by federal law...."


11.     At the closing of plaintiff's loan, plaintiff signed, and was given, a Notice of Right to Cancel form which set forth his three-day right to cancel the loan.  Adams dep. transcript, p. 62, l. 9-18; p. 74, l. 7-23, Appendix A; Notice of Right to Cancel, Appendix G.

      **PLAINTIFF'S RESPONSE:**      Admitted.


12.     Plaintiff testified that he understood his right to rescind the loan and that he understood that he had three-days from the closing of the loan in which to cancel the transaction.  Adams dep. transcript, pp. 62-64, l. 9-5; pp. 74-75, l. 7-9; p. 80, l. 2-7, Appendix A.

      **PLAINTIFF'S RESPONSE:**      Plaintiff admits this statement of fact but denies that i) it is material to the determination any claim or defense and ii) denies

4

that it is a complete statement of fact. In actuality, Mr. Adams testified that, in

addition to the notice of right to cancel, he was also presented at closing with a

confirmation of non-cancellation that stated that the three-day right-to-cancel

period had passed and he did not exercise his right. He was instructed to sign it

and did sign the confirmation at closing. (126-127). This was "curious,"

alarming and a contradiction (76-79). He testified that at his closing he asked his

broker why "how can you give me three days and take them away at the same

damn time. It doesn't make any sense." (75-76, 78-79, 125-6). (See also

Plaintiffs Statement of Material Facts, pp. 2-3).


13.     Plaintiff was not only familiar with this right from the subject transaction, but also

from his work as a home improvement contractor. Adams dep. transcript, p. 23, 1. 4-8; pp. 45-

46, 1. 13-11; pp. 62-63, 1. 19-11, Appendix A. As a home improvement contractor, plaintiff had

to provide the customers that he solicited at their homes with a notice of right to cancel and

three-days in which they could cancel the contract they entered into with plaintiff. Adams dep.

transcript, p. 23, 1. 4-8; pp. 45-46, 1. 13-11; pp. 62-63, 1. 19-11, Appendix A; 815 ILCS 505/2B.

**PLAINTIFF'S RESPONSE:**     Plaintiff admits this statement of fact but

denies that i) it is material to the determination any claim or defense and ii) denies

that it is a complete statement of fact. In fact, Mr. Adams' was not familiar with

the confirmation document (or any effect it could have on the notice of right to

cancel). His June 6, 2004 Equicredit loan closing was the first time he had ever

seen or been presented with a confirmation of non-cancellation ("I've never seen a

notice of cancellation with something different on the back... I've never seen

anything on a notice of cancellation except blank...I've always seen them and used

them when there's nothing on the back of them.")(76-77). Mr. Adams never

attended a loan closing for any of his customers whom he helped locate financing

("Yours was the second closing I've ever been to")(29-30).

14.    Plaintiff did not wish to cancel his loan during the rescission period.  Adams dep.

transcript, pp. 63-64, l. 12-5; pp. 74-75, l. 7-9, Appendix A.  In fact, plaintiff did not even review

the loan documents until the weekend after the loan closing, after the rescission period had

ended.  Adams dep. transcript, pp. 53-54, l. 19-6; pp. 58-59, l. 23-3; p. 130, l. 7-15.

**PLAINTIFF'S RESPONSE:**        Plaintiff admits this statement of fact but

denies that it is i) material to any claims or defenses and 2) denies that it is a

complete statement of fact.  Mr. Adams wanted to cancel the loan as soon as he

reviewed the closing documents.  (54-55).

15.    The person who most likely closed plaintiff's loan has no recollection of the

transaction.  Mitchell dep. transcript, pp. 86-87, l. 22-9, Appendix H.  However, she would have

provided the borrower with the confirmation form to sign when he picked up his disbursement

check.  Mitchell dep. transcript, pp. 115-116, l. 21-4, Appendix H.

**PLAINTIFF'S RESPONSE:**        Both statements are admitted.  The first

sentence or statement is material.  The second statement is inadmissible because it

is not supported by the necessary foundation under Federal Rule of Evidence #40

for testimony concerning habit or routine practice.  Thompson v. Boggs, et al., 33

F.3d 847, 854 (7th Cir. 1994).  Plaintiff also denies that the second sentence is a

complete statement of fact.  In fact, Ms. Mitchell testified that she agreed that

Equicredit's Letter of Closing Instructions required closing agents to return all

signed closing documents, including the confirmation, to the lender within 24

hours after closing, and she testified that she followed lenders' closing

instructions.  (98-99;100).  She also testified that the UPS shipping slip contained

within the title company's loan file, which document bears her handwriting and is

dated the same day of plaintiff's closing (June 6, 2000), indicates that all of the

closing documents listed on the Letter of Closing Instructions, including the

confirmation, were sent back to Equicredit on June 6, 2000.  (103-105).  She

testified that she simply did not recall whether she had ever presented a

confirmation at a closing.  (116).  She testified there was no record of whether or

when Mr. Adams returned to the title company to pick up his proceeds check (96)

and that there would not be any record of he had mailed or faxed back any

documents after closing (97-98).  She testified it was unusual for a lender to

utilize a confirmation form such as Equicredit's.  (111).


16.    Nationscredit's policy was to have the confirmation document signed after the

rescission period had passed.  Dodd dep. transcript, p. 105, l. 1-24, Appendix I.  Nationscredit

informed its closing agent to retain the confirmation document until the three-day rescission has

7

passed and have the customer sign on the funding date.  Dodd dep. transcript, pp. 105-106, l. 1-3, Appendix I.

> **PLAINTIFF'S RESPONSE:**        Denied.  See plaintiffs's Statement of
>
> Material Facts in support of his Motion for Summary Judgment on
>
> Liability, ¶¶ 15-29.

17.    The loan was not disbursed until June 12, 2000, more than three-days after the loan closing.  Mitchell dep. transcript, pp. 95-96, l. 4-15, Appendix H; Settlement Statement, Appendix J; Single Ledger Balance Report, Appendix K; Disbursements Summary Balance Sheet, Appendix L.

> **PLAINTIFF'S RESPONSE:**        Plaintiff admits this statement of fact but
>
> affirmatively states that it is not material.

### PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS
### THAT REQUIRE DENIAL OF SUMMARY JUDGMENT

Pursuant to Local Rule 56.1(b)(3) of the Rules of the U.S. District Court for the Northern District of Illinois, Plaintiff Matthew Adams hereby submits the following Additional Statement of Material Facts, which establishes that no genuine issue of material fact exists as to his allegations of fact:

1.    Mr. Adams testified that, when he was asked to sign the confirmation at his closing, he found the idea curious, alarming and contradictory.  He questioned his broker about it, stating "how can you give me three days and take them away at the same damn time.  It doesn't make any sense."  He was told it was standard practice.  (Appendix C to Pls's SMF, pp.

125-127, 75-79).

2.      Mr. Adams never attended any of his customers' loan closings.  (<u>Appendix C</u> to Pls's SMF, pp. 29-30, 76-77).

3.      Mr. Adams purchased residential property for the first time in his life in 1990. His second residential mortgage loan was the one he borrowed from defendants on June 6, 2000. (<u>Appendix C</u>, Pl's SMF).

4.      The first time Mr. Adams ever saw a confirmation form or a form like it was at his own loan closing on June 6, 2000.  (<u>Appendix C</u>, Pl's SMF, pp. 29-30).

5.      Ms. Mitchell testified that she agreed that Equicredit's Letter of Closing Instructions required closing agents to return all signed closing documents, including the confirmation, to the lender within 24 hours after closing, and she testified that she followed lenders' closing instructions. (<u>Appendix H</u>, Pl's SMF, pp. 98-99;100).

6.      The closing agent's loan file contains a UPS shipping receipt bearing a date of June 6, 2000, the same day as Mr. Adams' loan closing. The "next-day air" option is marked with an "x." The slip is addressed to Equicredit's post-closing department. The sender is Law Title, Equicredit's settlement agent for Mr. Adam's loan.  A copy of the slip is attached hereto as <u>Appendix A.</u>

7.      Ms. Mitchell testified that the handwriting on the UPS shipping slip is hers and that the date she wrote on the slip is June 6, 2000. She testified that all of the closing documents listed on the Letter of Closing Instructions, including the confirmation, were sent back to Equicredit on June 6, 2000. (<u>Appendix H</u>, Pl's SMF, pp.103-105).

8.      Ms. Mitchell testified that she simply did not recall whether she had ever

presented a confirmation at a closing.  (<u>Appendix H</u>, Pl's SMF, p. 116).

9.     Ms. Mitchell testified there is no record of whether or when Mr. Adams

returned to the title company to pick up his proceeds check and that there would not be any

record of he had mailed or faxed back any documents after closing (<u>Appendix H</u>, Pl's SMF, pp.

96-98).

10.     Ms. Mitchell testified it was unusual for a lender to utilize a confirmation

form such as Equicredit's.  (<u>Appendix H</u>, Pl's SMF, p. 111).


Respectfully submitted,


_____
Al Hofeld, Jr.

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER & GOODWIN,  LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)